IN THE
CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI

DANIEL HUMAN, individually and )
on behalf of all others similarly situated, )
                                )
            Plaintiffs. )
                                )
Vs.                           )     No.
                                )
ASSURED HEALTH GROUP, LLC., )
2328 10th Ave. N                 )     COMPLAINT CLASS ACTION
Lakeworth, FL 33461         )     Jury Trial Demanded
                                )
Registered Agent              )
Corporation Service Company )
1201 Hays St.                    )
Tallahassee, FL, 32301       )
                                )
           Defendants. )

**FILED**

JAN 1 8 2025

JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

---

## COMPLAINT CLASS ACTION

---

        Plaintiff Daniel Human ("Human" or "Plaintiff"), and on behalf of all others similarly situated brings this complaint against Defendant Assured Health Group, LLC., ("AHG"). Plaintiff's allegations as to his own actions are based on personal knowledge. The other allegations are based on his investigation, information and belief.

### Nature of the Action

1.     This is a class action under the Missouri No Call List and Telemarketing prohibitions set forth in §§ 407.1073, §407.1076, §407.1098.1, §407.1104 et seq., and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

1

2.      Plaintiff avers that Defendant Assured Health Group, LLC. (hereinafter collectively referred to as "AHG" or "Defendant"), made unsolicited telemarketing calls to his private residential cellular telephone number that is listed on the Missouri State and National "Do Not Call" Registries (the "Registries") without his express written consent.

3.      Defendant accomplishes their telemarketing campaigns by making unsolicited robocalls (*i.e.*, using a predictive dialer and/or pre-recorded and Automated Dialing Systems capable of storing Plaintiff's personal and private information and telephone number listed on the do not call registry) to private residential cellular telephone numbers, without the prior express consent of the persons using those cellular telephone numbers despite those numbers being lawfully registered by their owners on the Missouri and Federal Do-Not-Call registries.

4.      By doing so, Defendant violated the Missouri No Call List and Telemarketing prohibitions set forth in §§ 407.1073, §407.1076, §407.1098.1, §407.1104 et seq., RSMo., and violated 47 U.S.C. § 227(c)(5) of the Telephone Consumers Protection Act ("TCPA") when it called numbers on the Missouri and National Do Not Call Registries without their prior express written consent, including the Plaintiff.

5.      Defendants have caused Plaintiff and Putative Class Members to suffer concrete injuries as a result of placing unwanted robotic, Automatic Telephone Dialing Systems ("ATDS"), artificial intelligence generated and direct dialed telephonic calls/texts to their private residential telephones.

6.      Through this action, Plaintiff seeks injunctive relief to stop Defendant's unlawful telemarketing calls and texts. Plaintiff additionally seeks damages as authorized by the MDNC and TCPA on behalf of Plaintiff and the Class Members, and any other available legal or equitable remedies resulting from the actions of Defendant described herein. Additionally,

2

because telemarketing calls/texts typically use technology capable of generating thousands of similar calls per day, the Plaintiff sues on behalf of a proposed nationwide class of other people who received similar calls/texts.

7.    A Class Action is the best means of obtaining redress for the Defendant's illegal telemarketing and is consistent both with the private right of action afforded by the MDNC and TCPA, and the fairness and efficiency goals of Missouri Supreme Court Rule 52.08.

II.    Parties

8.    Plaintiff Daniel Human (hereinafter referred to as "Plaintiff" or "Mr. Human") is an individual residing in St. Louis County, Missouri.

9.    Defendant Assured Health Group, LLC. ("AHG" or "Defendant AHG") is a Florida company which is headquartered at 2328 10th Ave. Lakeworth, FL 33461 and it's Registered Agent Corporation Service Company 1201 Hays St., Tallahassee, FL 32301 and is a company that makes telemarketing calls, or employs its agents to make telemarketing calls within and into this District to numbers on the Missouri and Federal No Call Lists, just as it did with the Plaintiff.

### Jurisdiction and Venue

10.    This Court has jurisdiction for violations of the Missouri do not call registries under Chapter 407.010 et seq. RSMo. This Court has jurisdiction over the federal claims under the Telephone Consumer Protection Act, 47 U.S.C. 227(b)(1)(A) and 47 U.S.C. 227(c)(5). This Court has personal jurisdiction over the Defendant AHG because they either reside in this District and/or made the calls into this District, and/or they promulgated the policies and procedures and/or had the right to do so for Defendant AHG which encourage, entice, condone, and ratify illegal telemarketing texts into this District to persons on the no call lists. Additionally, Defendant AHG has sufficient minimum contacts with the State of Missouri in that

3

they transact business in Missouri, profits personally from AHG's sales made in Missouri; they send their products to Missouri; they advertise in Missouri, and the tortious acts complained of within this complaint occurred in Missouri to a Missouri resident, thereby subjecting AHG to Missouri's long arm statute, Section 506.500.1. See *Human v. USHealth Advisors, et al*, 2023 WL 5093872 (E.D. Mo. August 9, 2023); *UMB BANK, N.A. v. KRAFT CPAS, PLLC*, 2023 WL 3666879 (W.D. Mo. May 25, 2023); *Hand v. Beach KC, LCC*, 425 F.Supp.1096 (W.D. Mo. 2019).

11.    This Court has personal jurisdiction over the Defendants because they either reside in this District and/or made the calls into this District.

12.    Venue is proper because the calls at issue were made into this District and/or from this District to a Missouri resident in this District and Missouri has a strong interest in providing a forum for torts committed against their residents in Missouri.

## **TCPA Background**

13.    In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991); see also 47 U.S.C. § 227(b)(1)(A).

14.    The National Do Not Call Registry (the "Registry") allows subscribers and consumers to register their telephone numbers and thereby indicates their desire not to receive telephone calls at those numbers. *See also* 47 U.S.C. § 227(b)(1)(A).

15.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the citizen and/or consumer or the telephone number is removed by the database administrator." *Id.*

16.     The TCPA and implementing regulations prohibit the initiation of telephone calls to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 U.S.C. § 227(b)(1)(A). Damages under this code are up to $1,500 per call.

## THE MISSOURI NO-CALL LAW

17.     In accord with Missouri telemarketing laws, § 407.1073 et seq., requires telemarketers to:

"1. A telemarketer shall disclose, promptly and in a clear and conspicuous manner, to the consumer receiving the telephone call the following:

(1) That the purpose of the telephone call is to make a sale;

(2) The telemarketer's identifiable name and the seller on whose behalf the solicitation is being made;

(3) The nature of the merchandise or investment opportunity being sold;

(5) If the telephone call is made by any recorded, computer-generated, electronically generated or other voice communication of any kind. When engaged in telemarketing, such voice communication shall, promptly at the beginning of the telephone call, inform the consumer that the call is being made by a recorded, computer-generated, electronically generated or other type of voice communication, as the case may be."

18.     Mo. Rev. Stat. § 407.1076 provides in pertinent part:

It is an unlawful telemarketing act or practice for any seller or telemarketer to engage in the following conduct:

(3)     Cause the telephone to ring or engage any consumer in telephone

5

conversation repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive or harassing;

(10)  Knowingly and willfully initiate a telemarketing call to a consumer, or transfer or make available to others for telemarketing purposes a consumer's telephone number when that consumer has stated previously that he or she does not wish to receive solicitation calls by or on behalf of the seller unless such request has been rescinded.

(10)  Knowingly provide assistance or support to any telemarketer when that person knows or consciously avoids knowing that the telemarketer is engaged in any act in violation of sections 407.1070 to 407.1085; or

(11)  Knowingly utilize any method to block or otherwise circumvent a consumer's use of a caller identification service.

19.  Similarly, the Missouri Do Not Call Registry, Mo. Rev. Stat. § 407.1098.1, to be construed in *pari materia*, provides:

> No person or entity shall make or cause to be made any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section 407.1101 of the subscriber's objection to receiving telephone solicitations.

20.  Missouri Revised Statute 407.1104, imposes further restrictions:

> 1. Any person or entity who makes a telephone solicitation to any residential subscriber in this state shall, at the beginning of such solicitation, state clearly the identity of the person or entity initiating the solicitation.

> 2. No person or entity who makes a telephone solicitation to a residential subscriber in this state shall knowingly use any method to block or otherwise circumvent any subscriber's use of a caller identification service.

21.  A "residential subscriber" is defined as, "a person who has subscribed to residential telephone service from a local exchange company or the other persons living or residing with such person." Mo. Rev. Stat. § 407.1095(2), and Plaintiff is a qualified residential subscriber.

6

22.     A "telephone solicitation" is defined as "any voice communications over a telephone line from a live operator, through the use of ADAD equipment or by other means for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services." Mo. Rev. Stat. § 407.1095(3).

23.     Defendant's calls and/or texts to a telephone subscriber on the Missouri Do Not Call List is an unfair practice, because it violates public policy, and because it forced Plaintiff to incur time and expense without any consideration in return.

24.     Defendants' practice effectively forced Plaintiff to listen to their unsolicited sales calls in violation of State and Federal Law.

25.     Defendants violated the unfairness predicate of the Act by engaging in an unscrupulous business practice and by violating Missouri statutory public policy, which public policy violations in the aggregate caused substantial injury to hundreds of persons.

26.     Defendants' actions prevented the Plaintiff's telephone from being used for other legitimate purposes during the time Defendant was occupying the Plaintiff's telephone for Defendants' unlawful purpose.

27.     Chapter 407.1107 provides for up to $5,000 in damages for each knowingly violation.


III.     Factual Allegations

28.     Defendant AHG is a company that solicits for health insurance programs, and which targets senior citizens and others to purchase these policies, or brokers for insurance companies.

7

29.    To generate leads, Defendant AHG, and its agents, employees, and vendors, which upon information and belief includes other unknown marketing firms and call centers, make random, direct dialed and robocall generated telemarketing calls/texts to consumers who have never had a relationship with AHG, and who never consented to receive their calls.

30.    Defendant AHG also utilizes computer systems to block or otherwise circumvent called numbers' caller identification functions.[1]

31.    Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39).

32.    Plaintiff personally registered his private residential cellular telephone number (the "Number"), 314-915-XXXX, on the Missouri and National Do Not Call Registries in June 2022 to stop the plethora of annoying and harassing telemarketing phone calls he had been receiving, and it has since remained on both registries uninterrupted, and is not associated with any business. Plaintiff has been the sole subscriber and in sole possession of the phone which was called for more than 4 years.

33.    Despite this MDNC and DNC prohibitions, AHG placed more than ten (10) telemarketing calls/texts to Mr. Human between October 29, 2024, through November 25, 2024, all approved, condoned, enticed and ratified by Defendant AHG, and their policies, practices, and procedures.

---

[1] Telemarketers cause a local areas code and number to appear on the recipients' caller ID in order to deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify, offers automated outbound dialer software that gives users the ability to "[o]perate like a local business and boost contact rates by calling prospects from their own area code." *See* http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

34.     Defendant made ten (10) unsolicited calls/texts directly or by agents, employees or telemarketers during this period without Plaintiff's prior express written consent from the following phone numbers as follows: (314) 470-5067, (314) 470-6271, (314) 470-4567.

|     |          |         |
|-----|----------|---------|
| a.  | 10/29/24 | 2:40 pm |
| b.  | 10/29/24 | 2:41 pm |
| c.  | 10/29/24 | 2:51 pm |
| d.  | 10/29/24 | 3:38 pm |
| e.  | 10/29/24 | 3:25 pm |
| f.  | 10/30/24 | 2:56 pm |
| g.  | 10/30/24 | 4:03 pm |
| h.  | 10/30/24 | 4:05 pm |
| i.  | 10/31/24 | 4:29 pm |
| j.  | 11/25/24 | 5:47 pm |

35.     Despite the fact the Plaintiff is on both the State and Federal registries, the Defendants persistently solicited Mr. Human on his personal residential cell phone to purchase a policy through AHG. When asked, the telemarketers gave Plaintiff the parent company's name and Lakeworth, FL address.

36.    Just prior to being connected to the automated robotic telemarketer text, Plaintiff heard a click, a pause, then dead air space, several automated squeals, a phone ringer noise and the call was then connected to the robotic and automated telemarketer mass blast text.

37.    Defendant's mass automated calls/texts interrupted Plaintiff's family time and violated his right to privacy and seclusion, it harassed, annoyed and frustrated Plaintiff.

38.    During each call and text message the Defendants used computer-based technology to disable or otherwise circumvent the Plaintiff's caller identification function so he would believe it was a legitimate call from family or friends.

39.    The Defendants persistently harassed, humiliated, annoyed, and solicited Mr. Human to employ Defendant's services even though he is registered on the Federal and Missouri Do Not Call registry and has been for many years prior to their unsolicited calls to his private, personal residential cell phone.

40.    Plaintiff's privacy and right to seclusion have been grossly, deliberately, and repeatedly violated by the above-described automated mass blast texts and he was severely annoyed, frustrated, harassed and humiliated by myriad texts when he was not given an option to opt out of the three additional automated texts.

41.    The Plaintiff never provided his written consent to receive or request these mass automated texts and has never had a prior business relationship with any of the Defendants.

42.    Upon information and belief, and in light of the nature and character of these mass blast calls/text messages at issue - standardized, impersonal, and consistent in structure and format, also containing automated opting prompts and declarations.

43.    Upon information and belief, the unsolicited calls/text messages were sent voluntarily.

44.    The purpose of the calls/text messages at issue was to market the Defendant's business services.

45.    Plaintiff did not give Defendant prior express invitation or permission to send advertisement or marketing texts to his private residential cellular telephone number.

46.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their rights to privacy and seclusion have been violated, they were annoyed, harassed, and caused severe physical injuries, including incurring telephone service provider fees, wear and tear on his phone, damage and disruption to his phone's battery life, and other injuries and costs.

47.    Defendants made, and continue to make, these illegal calls to individuals nationwide without their prior written express consent to do so and will continue to violate the rights of the Class without the Court's intervention.

48.    During this series of ten (10) calls/texts, the Defendant's and/or its third-party telemarketers identified Defendant AHG under the fictitious names of Health Registration Center a d/b/a for AHG (along with the Pompano Beach address) and then solicited Mr. Human to purchase a policy, but refused to promptly disclose:

     a.    The telemarketers name and the phone number where the telemarketer could be reached;

     b.    The name of the telemarketing company they were employed by;

     c.    Whether the telephone call is made by any recorded, computer-generated, electronically generated or other voice communication of any kind.

    d.     Whether the call is being made by a recorded, computer-generated, electronically generated or other type of voice communication.

    e.     The correct name, address and phone number of the seller.

    f.     In numerous calls the telemarketer utilized fictitious company names or abbreviated names so the Plaintiff could not readily identify Defendant AHG without extensive investigation.

49.    Defendant AHG knew or reasonably should have known, or consciously avoided knowing that it's telemarketers, agents or vendors were deliberately failing to disclose required information, misrepresenting its company name, using unregistered fictitious names and blocking or circumventing called numbers caller identification service providers and causing consumers phones to ring and or engaging consumers in telephone conversations repeatedly or continuously in a manner a reasonable consumer would deem to be annoying, abusive and/or harassing, which it did ten (10) times with the Plaintiff between October 29, 2024 and November 1, 2024, yet continued to provide its telemarketing vendors, agents and employees assistance and support.

50.    Defendant AHG knew or reasonably should have known that when it provided the Plaintiff's private residential phone number to its telemarketers, agents or vendors, that the telemarketers would repeatedly call 314-915-XXXX in an annoying, abusive or harassing manner - at times calling the number several times in a single day.

51.    Defendant AHG knew or reasonably should have known that its telemarketers, agents, employees or vendors would violate the privacy and rights to seclusion of the subscribers to the called numbers by calling the numbers which are registered on the Missouri and national Do Not Call registries.

52.    Plaintiff found each of the Defendants calls to be abusive, annoying, harassing, frustrating and in violation of his right to seclusion and privacy.

53.    Plaintiff did not have a prior business relationship with Defendant AHG.

54.    Plaintiff never provided Defendant AHG with prior written consent to call 314-915-XXXX, Plaintiff's private residential telephone number.

55.    Each of the ten (10) illegal telemarketing calls were condoned, encouraged, enticed and ratified by Defendant AHG and their agents, employees and/or vendors.

56.    During each call made with automatically generated and random generating computer equipment or calls directly dialed, the telemarketer annoyed, harassed, and abusively engaged Mr. Human to employ Defendant AHGs' sales and services.

57.    The Defendant persistently harassed, humiliated, annoyed, frustrated, and solicited Mr. Human in each unsolicited telemarketing call listed supra, despite that Plaintiff is registered on the Federal and Missouri Do Not Call registry and has been for many years prior to their unsolicited calls to his private, personal residential cell phone number.

58.    Defendant AHG failed to scrub the number 314-915-XXXX prior to making these ten (10) unsolicited telemarketing calls.

59.    Defendant AHG and/or its employees, agents and telemarketers failed to register with both the Missouri Attorney General and the FCC as telemarketers.

60.    Plaintiffs' privacy and right to seclusion have been grossly, deliberately, and repeatedly violated by the above-described ten (10) unsolicited telemarketing calls and Plaintiff was severely annoyed, harassed, frustrated and humiliated by these repeated and abusive telemarketer calls.

13

61.    Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendant because their rights to privacy and seclusion have been violated, they were annoyed, harassed, humiliated, abused, and caused severe physical injuries, incurring telephone service provider fees, wear and tear on his phone, damage and disruption to his phone's battery life, and other injuries and costs.

62.    Defendant AHG and its telemarketer vendors made, and continue to make, these telemarketing calls to individuals nationwide without a prior established relationship or their prior written express consent to do so.

62.    During all the calls after the initial call was answered it was obvious that they were made by automatic yet random equipment by the Defendant as each prefaced by automated clicks, several computer squeals, pauses, and dead air space before the telemarketer began speaking. This artificial intelligence and automated computer use of randomly generated phone numbers are akin to the illegal calls made using predictive dialers:

> Predictive dialers initiate phone calls while telemarketers are talking to other consumers . . . In attempting to "predict" the average time it takes for a consumer to answer the phone and when a telemarketer will be free to take the next call, predictive dialers may either "hang-up" on consumers or keep the consumer on hold until connecting the call to a sales representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

63.    Defendant AHG, and their agents, employees and/or vendors placed numerous computer-generated calls alleged in this complaint with the use of random and sequential

telephone number generating equipment and continued to return calls to subscribers who answered the calls.

64.    Predictive dialers constitute an automatic telephone dialing system; they can store, produce, and dial any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls/texts alleged. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

65.    None of the telephone calls/texts alleged in this complaint constituted calls/texts for emergency purposes.

## Class Action Allegations

66.    Class Definition: Plaintiff brings this Complaint against the Defendants, as authorized by Missouri Supreme Court Rule 52.08 on behalf of himself and the following three Classes:

> **Missouri Do Not Call Class ("MDNC Class")**: All persons in the State of Missouri who (1) had his or her telephone number(s) registered with the Missouri Do-Not-Call registry for at least thirty days; (2) but who received more than one telephone call or text made by or on behalf of Defendant; (3) within a 12-month period; and (10) from ten years prior to the filing of this Complaint.

> **National Do Not Call Registry Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing calls from or on behalf of Defendant (3) within a 12-month period, (10) from ten years prior the filing of the Complaint.

> **Robocall Class and Automatic Telephone Dialing System Class**: All persons in the United States who (1) telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but received more than one telemarketing call

15

from or on behalf of Defendant on their cellular phone service; (3) within a twelve month period; (10) through the use of an automatic telephone dialing system or artificial or pre-recorded voice system; (5) within ten years prior to the filing of this Complaint.

67.    A substantial number of the events which give rise to the claim occurred in St. Louis County, Missouri. Therefore, under Local Rule, this civil action should be assigned to the Circuit Court of St. Louis County, Missouri. In the event the Defendant seeks to remove this case to federal Court, the appropriate venue lies in the St. Louis Division of the United States District Court for the Eastern District of Missouri under Missouri's Long Arm Statute.

68.    Excluded from the Classes are Defendants, any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded from the Classes are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise the Class definitions based on facts learned during discovery. Plaintiff is a member of each Class.

69.    Class Numerosity: The exact number of members of each Class is unknown and is not available to Plaintiff currently, but such information is readily ascertainable by Defendant and their agents. The Classes are so numerous that joining all members is impractical. Plaintiff alleges that there are more than 40 members of each Class.

70.    The Class as defined above are identifiable through phone records and phone number databases and defendants' business records.

71.    The potential members of the Class number at least 40.    Individual joinder of these persons is impracticable.

16

72.     Plaintiff is a member of the Class.

73.     Class Commonality: Common questions of fact and law exist as to all members of the Classes and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of the Class will be sufficient to establish liability to the Class member. The predominant common questions include:

a.     Whether Defendant's used an "automatic telephone dialing system" as such terms are defined or understood under the MDNC, TCPA and applicable FCC regulations and orders;

b.     Whether Defendant had written prior express written consent to call Class members prior to making telemarketing calls;

c.     Whether Defendants systematically made telephone calls to members of the DNC and MDNC Classes whose telephone numbers were registered with the Missouri and national Do-Not-Call registries;

d.     Whether Plaintiff and Class Members are entitled to damages, including whether Defendant's violations were performed willfully or knowingly such that Plaintiff and Class Members are entitled to treble damages; and

d.     Whether Plaintiff and Class Members are entitled to injunctive relief for violations of their privacy and attorney's fees and costs.

74.     The Plaintiffs' claims are typical of the claims of members of the Class. Plaintiff is not different in any relevant way from any other member of the Classes, and the relief he seeks is common to each Class.

17

75.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he has hired attorneys experienced in class actions, including TCPA class actions.

76.     Predominance and Superiority: The Classes alleged in this Complaint are appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendant's misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

77.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, subsidiaries, and sub-contractors.

78.     Injunctive Relief is Appropriate: Based on information and belief, Defendant AHG, and their agents, employees and/or vendors continue to engage in the improper practices

18

discussed above. Injunctive relief is necessary and appropriate to enjoin Defendant's conduct and to prevent irreparable harm to Plaintiff and Class members for which they have no adequate remedy at law.

79.     The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

## COUNT I
### Violations of the MDNC Against All Defendants
### by Plaintiff Individually and on Behalf of the MDNC Class

80.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 79 as though set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the Missouri No Call and Anti Telemarketing Class Members ("MDNC") against Defendant.

82.     Defendant AHG acts and omissions of making ten (10) or more calls/texts to Plaintiff's private residential phone constitute multiple violations of the MDNC in that No person or entity shall make or cause any telephone to ring and make any telephone solicitation to the telephone line of any residential subscriber in this state who has given notice to the attorney general, in accordance with rules promulgated pursuant to section § 407.1073, § 407.1076, §407.1098.1 of the subscriber's objection to receiving telephone calls.

83.     Defendant failed to secure prior express written consent from Plaintiff and the Class Members prior to making these and other calls/texts and had no prior business relationship with Plaintiff.

84.     In violation of the MDNC, Defendant made and/or knowingly allowed automated telephonic calls to be made to Plaintiff and the Class members without Plaintiff's and the Class

members' prior express written consent and after notice was given by Putative Class Members to the Missouri Attorney General that they did not want to receive said calls/texts.

85.    Defendants made and/or knowingly allowed the telephonic calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers, used a robotic interface with the Plaintiff, disabled the Caller I.D. function so Plaintiff could not identify the caller prior to answering the call/text to deceive Plaintiff to answer the unsolicited calls.

86.    As a result of Defendant's conduct, Plaintiff and Class members were knowingly, willingly and deliberately harmed and are each entitled to a maximum of $5,000.00 in damages for each violation.

87.    Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

**WHEREFORE**, Plaintiff Human and all members of the MDNC class prays for judgment against Defendant AHG, for $5,000.00 per violation or $50,000.00 (for Human's damages), and for additional damages for each class member predicated upon the calls received, and for their attorney's fees and costs, appropriate injunctive relief, and for such further relief deemed just and equitable in the premises.

<u>Count II</u>
<u>Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227(b)(1)(A)</u>
<u>(On behalf of Plaintiff and the Robocall and ATDS)</u>

88.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 87 as if fully set forth herein.

89.    The foregoing acts and omissions of Defendant AHG and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf through the use of an automated

telephone dialing system constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A) et seq, by making calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

90.     The foregoing acts and omissions of Defendant AHG, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the by making calls/texts, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

91.     The Defendant's violations were negligent, willful, or knowing and the Plaintiff and Putative Class members suffered concrete injuries because of Defendants actions.

92.     As a result of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, Plaintiff and members of the Class are entitled to an award of $1,500 in damages for every call made.

93.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant AHG, as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff and each member of the Classes, beginning with Plaintiff Human in an amount of $15,000.00; and for additional damages for each class member based on their individual receipt of these unsolicited telemarketing calls.

21

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For prejudgment interest on all amounts awarded;

(e) For an order of restitution and all other forms of equitable monetary relief;

(f) For injunctive relief as pleaded or as the Court may deem proper; and

(g) Such further and other relief as the Court deems necessary.

### COUNT III
### Violations of the TCPA Against the Defendant
### by Plaintiff Individually and on Behalf of the DNC Class

94.    Plaintiff hereby incorporates by reference as though set forth fully herein paragraphs 1 through 93. Plaintiff asserts this claim on behalf of himself and members of the Do Not Call Registry Class.

95.    47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone calls to which they object.

96.    The foregoing acts and omissions of Defendant AHG, and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf by calling the Plaintiff's residential cell phone which is listed on the national no call registry more than ten (10) calls within a twelve (12) month period in contravention of 47 U.S.C. 227, constitute numerous and deliberate violations of the TCPA, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

22

97.     Defendant AHGs' violations were negligent, willful, or knowing and the Plaintiff and Putative Class members suffered concrete injuries because of Defendants actions.

98.     As a result of Defendant AHG and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for each and every call/text made.

99.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant AHG from making similar calls/texts to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of all others similarly situated, seeks judgment against Defendant AHG as follows:

(a) For an order certifying the Classes and naming Plaintiff as the representative of the Classes and Plaintiff's attorneys as Class Counsel to represent the Classes;

(b) For an award of statutory damages for Plaintiff and each member of the Classes in an amount exceeding $15,000.00.

(c) For an order declaring that the Defendant's conduct violates the statutes referenced herein;

(d) For an order finding in favor of Plaintiff and the Classes on all Counts asserted herein;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) Such further and other relief as the Court deems necessary.

## COUNT IV
### Defendant's Vicarious Liability

100.    Plaintiff reasserts and incorporates fully herein by reference paragraphs 1 through 99 above paragraphs as though fully set forth herein.

101.    For 28 years now, the FCC has made clear that "the party on whose behalf a [call/text] is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

102.    In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

103.    The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were *judgment proof, unidentifiable, or located outside the United States, as is often the case.* Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

104.    The FCC has **rejected** a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

105.    A connection exists between the Defendant herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendant AHG so they could profit from a common enterprise in which they participated.

106.    "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability."' *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (10th Cir. 2013).

107.    Defendant AHG, is vicariously liable for their independent third-party marketing agents phone calls/texts at issue because Defendant AHG substantially participated, promulgated the policy and ratified making the calls to Plaintiff and putative class members registered on the no call lists without their express written consent.

108.    Defendant AHG is further vicariously liable for the calls complained of by Plaintiff herein because they:

    a)    authorized or caused telemarketers, employees, agents, vendors to initiate the phone calls/texts or initiated the calls/texts themselves;

    b)    directly or indirectly controlled the persons who actually made or initiated the calls/texts;

    c)    allowed the telemarketers and independent agents access to information and operating systems within Defendant's control for the purpose of seeking to sell their services, without which they would not be able to maintain and further robocalling atds, computer generated texting, and direct dialing;

    d)    allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendant's sales or operational systems.

    e)    approved, wrote, reviewed, or participated in developing the telemarketing sales scripts to sell their services.

25

f)    Defendant AHG knew or reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendant failed to take effective steps within their power to require compliance;

g)    Defendant AHG gave substantial assistance or support to the telemarketers, employees, agents or vendors and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that these were engaged in acts or practices that violated the TCPA and MDNC and ratified each of the illegal calls.

109.    Defendant AHG's telemarketers had apparent authority to engage in the autodialing and auto texting, direct dialing, robocalling and direct dialing at issue herein because after Plaintiff patiently listened the scripted pitch the Defendant's all profited from each and every sale they made thereby ratifying their illegal practice.

110.    Defendant AHG ratified the robocalls, automatic and computer-generated calls to Plaintiff described above because they accepted and intended the benefits to them of the calls while knowing or consciously avoiding knowing their telemarketer-agents were calling and robocalling cell phones and phone numbers listed on the Federal and Missouri State Registry without complying with the Registry and without prior express written consent of the robocalled and called consumers.

111.    As a direct and proximate result of the ten (10) illegal calls by the above Defendant, Plaintiff and Putative Class Members suffered the knowing, willful, deliberate and gross violation of their rights to privacy, solace and seclusion as set forth above, they were frustrated, harassed, annoyed, abused, as well as suffered monetary loss in phone provider service fees, wear and tear on his phone equipment, and the degradation of his battery life, thereby entitling each class member to additional punitive damages.

*WHEREFORE*, Plaintiff prays for entry of judgment against Defendant AHG, and their independent contracting agents for their vicarious liability for an additional $65,000.00 and for

26

his statutory, actual and/or treble damages sufficient in size to set a stern example and deter in the future like conduct complained of by Defendant or others. Plaintiff for additional damages on behalf of all Putative Class members for the reasons stated herein, and for such other and further relief as the court finds proper. Plaintiff requests an award of his attorney fees, costs and pre and post judgment interest.

Respectfully submitted,

/s/Daniel Human
Daniel Human
10423 Conway Rd.
St., MO 63131
danh11polo@gmail.com
(314) 915-XXXX

## NOTARY PUBLIC

A person personally known to me to be Daniel Human, personally appeared before me on the date stated hereafter and after being duly sworn upon his oath, deposed and stated under the penalties of under perjury that the facts set forth in the above and foregoing Class Action Complaint are true and correct to the best of his knowledge and belief.

_____                    _____1/13/25_____
Daniel Human                                                      Date


_____
Notary Public

MY COMMISSION EXPIRES:

DONNA S DANCER
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES SEPTEMBER 27, 2026
ST. LOUIS COUNTY
COMMISSION #94460374

27